UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JESUS SANCHEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No.: 19-cv-1097-JBM |
| | ) | |
| WEXFORD HEALTH SOURCES, INC., | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MERIT REVIEW – AMENDED COMPLAINT

Plaintiff, proceeding *pro se*, files an amended complaint under 42 U.S.C. § 1983 alleging deliberate indifference to his serious medical needs at the Pontiac Correctional Center ("Pontiac"). The case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the Complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour,* 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States,* 721 F.3d 418, 422 (7th Cir. 2013)(citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 Fed. Appx. 588, 589 (7th Cir. 2011) quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

Plaintiff needs corrective lenses for issues with his eyesight. When he was previously confined at the Cook County Jail and at the Stateville Correctional Center, he was allowed contact lenses. In September 2013, Plaintiff was transferred to the Pinckneyville Correctional Center and his contact lenses were confiscated. He was later transferred to Pontiac where he continued to wear eyeglasses but not contact lenses. Plaintiff received new eyeglasses at Pontiac

1

some time in 2015. He indicates that he wore them "sparingly" for the next one or two years as, if he wears glasses for longer than 15 minutes, he experiences headaches, blurred vision, and dizziness.

On February 7, 2017, Plaintiff told Pontiac ophthalmologist Defendant Dr. Kehoe of this problem. Defendant Kehoe referred Plaintiff to INI Neuro-ophthalmology where he was seen by specialist Dr. Reuben Valenzuela on October 5, 2017, June 21, 2018, and October 4, 2018. Plaintiff asserts that at the time of the last appointment, Dr. Valenzuela determined that Plaintiff's problems were caused by a neurological disorder, not otherwise identified. Dr. Valenzuela informed Plaintiff that his headaches and dizziness would be eliminated if he wore contact lenses instead of eyeglasses. Dr. Valenzuela referred Plaintiff to the UIC Hospital to receive the contact lenses, with instructions that Plaintiff return for follow-up after receiving them.

When Plaintiff returned to Pontiac, Defendant Doctors Tilden and Kehoe referred him to UIC, not for contact lenses, but for a second opinion. Plaintiff was seen there on December 7, 2018, by Dr. Wyatt Messenger, an optometrist. Dr. Messenger performed an exam and indicated that there was no ophthalmological reason for Plaintiff to be unable to wear eyeglasses. When Plaintiff responded that he had been diagnosed with a neurological condition, Dr. Messenger told him that he had no documentation of this as Dr. Valenzuela's records had not been forwarded to him.

When Plaintiff returned to Pontiac, he met with Dr. Kehoe who told him that the request for contact lenses had been denied under the IDOC contact lens policy. Plaintiff argued, to no avail, that his request conformed to the policy as a physician had determined that the contact lenses were medically necessary.

Plaintiff asserts that Defendant Tilden was deliberately indifferent in failing to forward his records to Dr. Messenger and canceling the follow-up appointment with Dr. Valenzuela. He asserts that Defendants Tilden and Kehoe were deliberately indifferent in refusing to authorize the contact lenses which had been deemed medically necessary by a specialist. Plaintiff requests injunctive relief, that he be provided contact lenses and contact lens supplies, and compensatory and punitive damages.

Here, Plaintiff alleges that he has a neurological disorder diagnosed by a specialist, Dr. Valenzuela. He alleges, further, that Dr. Valenzuela determined that Plaintiff's headaches and dizziness were the result of the neurological disorder and would abate if he wore contact lenses rather than eyeglasses. While it appears that Defendants Tilden and Kehoe relied on the contradictory opinion of an optometrist, the optometrist did not have the relevant records for review and did not have the level of expertise of neurological-ophthalmologist Dr. Valenzuela. This is sufficient to state a claim against Defendants Tilden and Kehoe. *See Zaya v. Sood*, 836 F.3d 800, 807 (7th Cir. 2016) (there existed a material issue of fact as to whether the defendant general practitioner should have followed the recommendations of the specialist). *See also*, *Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016), *as amended (Aug. 25, 2016)* (a prison doctor's refusal to "take instructions from a specialist" may be evidence of a significant departure from acceptable medical judgment).

**IT IS THEREFORE ORDERED:**

1. This case shall proceed solely on the deliberate indifference claims against Defendants Tilden and Kehoe, identified herein. All other claims will not be included in the case, except in the Court's discretion upon motion by a party for good cause shown, or by leave

of court pursuant to Federal Rule of Civil Procedure 15.  As Plaintiff has not re-pled any claims against Defendants Meeks and Wexford, they are DISMISSED.

       2.      The Clerk is directed to send to each Defendant pursuant to this District's internal procedures: 1) a Notice of Lawsuit and Request for Waiver of Service; 2) a Waiver of Service; 3) a copy of the Complaint; and 4) a copy of this Order.

       3.      If a Defendant fails to sign and return a Waiver of Service to the Clerk within 30 days after the Waiver is sent, the Court will take appropriate steps to effect formal service on that Defendant and will require that Defendant pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).  If a Defendant no longer works at the address provided by Plaintiff, the entity for which Defendant worked at the time identified in the Complaint shall provide to the Clerk Defendant's current work address, or, if not known, Defendant's forwarding address.  This information will be used only for purposes of effecting service.  Documentation of forwarding addresses will be maintained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

       4.      Defendants shall file an answer within the prescribed by Local Rule.  A Motion to Dismiss is not an answer. The answer it to include all defenses appropriate under the Federal Rules.  The answer and subsequent pleadings are to address the issues and claims identified in this Order.

       5.      Plaintiff shall serve upon any Defendant who has been served, but who is not represented by counsel, a copy of every filing submitted by Plaintiff for consideration by the Court and shall also file a certificate of service stating the date on which the copy was mailed. Any paper received by a District Judge or Magistrate Judge that has not been filed with the Clerk or that fails to include a required certificate of service will be stricken by the Court.

6. Once counsel has appeared for a Defendant, Plaintiff need not send copies of filings to that Defendant or to that Defendant's counsel. Instead, the Clerk will file Plaintiff's document electronically and send notice of electronic filing to defense counsel. The notice of electronic filing shall constitute notice to Defendant pursuant to Local Rule 5.3. If electronic service on Defendants is not available, Plaintiff will be notified and instructed accordingly.

7. Counsel for Defendants is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Counsel for Defendants shall arrange the time for the depositions.

8. Plaintiff shall immediately notice the Court of any change in mailing address or phone number. The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

**IT IS FURTHER ORDERED THAT THE CLERK IS DIRECTED TO**:

1) ATTEMPT SERVICE ON DEFENDANTS PURSUANT TO THE STANDARD PROCEDURES; AND,

2) SET AN INTERNAL COURT DEADLINE 60 DAYS FROM THE ENTRY OF THIS ORDER FOR THE COURT TO CHECK ON THE STATUS OF SERVICE AND ENTER SCHEDULING DEADLINES.

LASTLY, IT IS ORDERED THAT IF A DEFENDANT FAILS TO SIGN AND RETURN A WAIVER OF SERVICE TO THE CLERK WITHIN 30 DAYS AFTER THE WAIVER IS SENT, THE COURT WILL TAKE APPROPRIATE STEPS TO EFFECT FORMAL SERVICE THROUGH THE U.S. MARSHAL'S SERVICE ON THAT DEFENDANT AND WILL REQUIRE THAT DEFENDANT TO PAY THE FULL COSTS OF FORMAL SERVICE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(d)(2).

ENTERED:   11/22/2019

                                                                   s/ Joe Billy McDade
                                                                      JOE BILLY McDADE
                                                            UNITED STATES DISTRICT JUDGE